IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2016 JAN 25 PM 4: 24

| | | |
|---|---|---|
| JADA LYLE, INDIVIDUALLY AND | § | |
| AS NEXT FRIEND OF L.T., | § | |
| A MINOR CHILD, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL NO. A-14-CV-0300-LY |
| | § | |
| 24 HOUR FITNESS USA, INC. AND | § | |
| RICARDO RIVERA, | § | |
| DEFENDANTS. | § | |

## ORDER

Before the court in the above styled and numbered removed action are Defendant 24 Hour Fitness U.S.A., Inc.'s Motion to Exclude Opinions of Sherryll Kraizer, Ph.D. filed October 13, 2015 (Clerk's Document No. 38), Plaintiff Jada Lyle's Response to Defendant's Motion to Exclude Opinions of Sherryll Kraizer, Ph.D. filed October 27, 2015 (Clerk's Document No. 43), and 24 Hour Fitness's Reply in Support of its Motion to Exclude Opinions of Sherryll Kraizer, Ph.D. filed November 3, 2015 (Clerk's Document No. 44).

While Lyle was exercising at a 24 Hour Fitness facility in Austin, Texas, on June 28, 2013, her four-year-old daughter, L.T. was playing on the playscape in the supervised children's area located inside the facility, called the "Kids Club." As L.T. was playing, she fell off of the playscape and fractured her elbow. Rather than staff at the Kids Club immediately notifying Lyle of L.T.'s injury, Lyle alleges that she learned about L.T.'s injury when she picked up L.T. from the Kids Club, about 50 minutes after the incident. Lyle commenced this action seeking to recover damages. On

behalf of L.T., Lyle claims that 24 Hour Fitness was negligent in hiring, training, supervising, and retaining its employees, which proximately caused L.T.'s damages.[1]

In reviewing Lyle's claims, the court applies Texas law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938). The Texas Supreme Court has not "ruled definitively on the existence, elements, and scope" of negligent retention, supervision, training, and hiring claims. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n. 27 (Tex. 2010). However, the supreme court has stated: "In a negligent-hiring or negligent-entrustment claim, a plaintiff must show that the risk that caused the entrustment or hiring to be negligent also proximately caused plaintiff's injuries." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010). Texas appellate courts hold that the elements of an action for negligently hiring, supervising, training, or retaining an employee are: (1) the employer owed the plaintiff a legal duty to hire, supervise, train, or retain competent employees; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiff's injury. *See e.g., Morrone v. Prestonwood Christian Academy*, 215 S.W.3d 575, 585 (Tex. App.–Eastland 2007, pet. denied). Claims against an employer for negligently hiring, supervising, training, or retaining an employee are based on direct liability, not on vicarious liability. *See Soon Phat, L.P. v. Alvarado*, 396 S.W.3d 78, 100-01 (Tex. App.–Houston [14th Dist.] 2013, pet. denied).

---

[1] Lyle originally alleged claims both as next friend of L.T. and in her individual capacity. She also alleged claims against the manager of the 24 Hour Fitness facility, Ricardo Rivera. By a previous order, the court dismissed all of Lyle's claims alleged against Rivera, finding that he was improperly joined in this action. Also pending before the court in this action are 24 Hour Fitness's motion for summary judgment and Lyle's response. Included within Lyle's response is a stipulation that she is no longer pursuing the following claims: (1) all claims alleged against 24 Hour Fitness in her individual capacity; (2) L.T.'s premises defect claim; and (3) L.T.'s gross-negligence claims.

In support of her claims, Lyle designated Sherryl Kraizer, Ph.D., a specialist in child safety, as a retained expert witness on liability issues. Kraizer submitted a 32-page report which includes her opinions, details the basis for her opinions, and refers to the documents she reviewed in reaching her opinions. 24 Hour Fitness requests that the court exclude Kraizer's opinions that (1) "L.T.'s injury was totally preventable" as speculative and *ipse dixit*; (2) that the attendants who were working in the Kid's Club were not properly supervising the children; (3) that 24 Hour Fitness failed to meet the standard of care in its training of employees; and (4) that 24 Hour Fitness's actions after L.T.'s incident are irrelevant, and therefore unhelpful, and should be excluded.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony, providing that:

> [i]f the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based in sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Rule 702 was amended to incorporate the principles first articulated by the United States Supreme Court in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* FED. R. CIV. P. 702, Adv. Comm. Notes (2000). Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).

Following *Daubert* and its progeny, trial courts act as gatekeepers, overseeing the admission of scientific and nonscientific expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

3

147 (1999). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. In carrying out this task, district courts have broad latitude in weighing the reliability of expert testimony for admissibility. *See Kumho Tire Co.*, 526 U.S. at 152. The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

*Daubert* provides the analytical framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence. *See Kumho Tire Co.*, 526 U.S. at 141. This *Daubert* framework includes many factors that can be used to determine the admissibility of expert testimony, including, but not limited to, whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. *See Daubert*, 509 U.S. at 593-94. Not every *Daubert* factor will be applicable in every situation and a court has discretion to consider other factors it deems relevant. *See Kumho Tire*, 526 U.S. at 151-52. The Fifth Circuit has directed that, "[i]n the vast majority of cases, the district court first should decide whether the factors mentioned in *Daubert* are appropriate." *Black v. Food Lion, Inc.*, 171 F.3d 308, 311-12 (5th Cir. 1999). Whether *Daubert's* suggested indicia of reliability apply to any given testimony is a fact-specific inquiry dependant on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony. *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000).

Expert witnesses perform two roles: explaining evidence to a jury, and acting as a source of evidence for a jury. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). The focus in deciding whether an expert's opinion should be admitted is whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702. The trial court should "insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Although the *Daubert* analysis is applied to ensure expert witnesses have employed reliable principles and methods in reaching their conclusions, the test does not judge the expert conclusions themselves. *Daubert*, 509 U.S. at 594-95. The focus must be solely on principles and methodology rather than the conclusions generated. *Id.* at 595. However, conclusions and methodology are not entirely distinct from one another. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Nothing in *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *Id.* A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *Id.*

Notwithstanding the dictates of *Daubert* and its progeny, "the rejection of expert testimony is the exception rather than the rule." FED. R. CIV. P. 702, Adv. Comm. Notes (2000). *Daubert* did not work a "'seachange over federal evidence law,'" and "'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *See id.* (quoting *United States v. 14.38 Acres of Land, More or Less, Situated in Leflore County, Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As *Daubert* recognized, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

This court's role as a gatekeeper is not intended to supplant the adversary system in which vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are means of attacking shaky but admissible evidence. *See id.*

24 Hour Fitness does not challenge Kraizer's qualifications to offer opinions about child safety nor are there any contentions that Kraizer's opinions regarding the applicable standards of care are improper.

The court finds that Kraizer based her opinions on evidence produced during discovery, including the 24 Hour Fitness Kids Club Policies and Procedures, the depositions of Alyssa Alvarez and Mary Bridge, the 24 Hour Fitness employees who were working in the Kids Club at the time of the incident, Lyle's deposition, Defendants' responses to discovery requests, incident reports, the 24 Hour Fitness Kids Club Training Materials, photos of the Kids Club and playscape, a videotape, which does not capture L.T.'s fall from the playscape but does show the employees' followup after the incident, the declaration of Ricardo Rivera, the manager of 24 Hour Fitness, and the SIMON 24 Hour Fitness Website, which is "an online portal for the policies and procedures of 24 Hour Fitness."

The court also finds many of 24 Hour Fitness's criticisms of Kraizer's opinions can be adequately addressed at trial through cross-examination. Contrary to 24 Hour Fitness's argument, the court also finds lacking any suggestion in Kraizer's report or deposition that she maintains that L.T.'s injuries were caused by any post-incident conduct. Rather, the court finds that Kraizer's opinions regarding post-accident conduct relevant regarding 24 Hour Fitness's training of its employees.

In focusing on whether Kraizer's opinions should be admitted, and not the content of the opinions, the court finds that Kraizer's opinions were based on data in this action and that in the

proceedings her testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702. Having considered the motion, the response, and the reply,

**IT IS ORDERED** that Defendant 24 Hour Fitness U.S.A., Inc.'s Motion to Exclude Opinions of Sherryll Kraizer, Ph.D. filed October 13, 2015 (Clerk's Document No. 38) is **DENIED**.

SIGNED this 25th day of January, 2016.

/s/ Lee Yeakel
LEE YEAKEL
UNITED STATES DISTRICT JUDGE