**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JADA LYLE, Individually and as Next** | § | |
| **Friend of L.T., a Minor Child,** | § | |
| | § | |
| **v.** | § | **A-14-CV-300 LY** |
| | § | |
| **24 HOUR FITNESS, USA, Inc.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE DAVID EZRA
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment, Dkt. No. 45, Plaintiff's

Response, Dkt. No. 49, and Defendant's Reply, Dkt. No. 51. The undersigned submits this Report

and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of

Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District

Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States

Magistrate Judges.

## I.   BACKGROUND

This is a personal injury suit that stems from an accident that occurred in the Kids' Club play

area of a 24 Hour Fitness, USA, Inc. gym.  On June 28, 2013, Jada Lyle, the Plaintiff in this case,

dropped her daughter, L.T., a four year old minor, off to play at the Kids' Club while she exercised.

*See* Dkt. No. 46 at 27. The Kids' Club provides various activities to keep children entertained,

including a television, video games, toys, puzzles, and an indoor playscape structure.  *Id.* at 25-26.

The Kids' Club has staff on hand to supervise the children while they play.  *Id.*  On the day of the

accident, L.T. was playing on the playscape when she fell.  *Id.* at 29.  As a result of the fall, L.T.

suffered a fractured elbow, which eventually required substantial medical treatment.  Dkt. No. 15 at 3.

## II.  STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir.  2007).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that

evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.  ANALYSIS

Lyle brings three claims as next friend for L.T.: negligence, negligent supervision, and negligent training.[1] In reviewing Lyle's claims, the court applies Texas law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938).

### A.  Negligence

Lyle alleges that 24 Hour Fitness breached its duty of ordinary care to L.T. "by failing to supervise and/or protect" her, "and/or provide a safe environment while in [its] care, custody, and control." Dkt. No. 15 at 3. Lyle contends that this breach of 24 Hour Fitness's duty proximately caused the injuries to L.T. *Id.*

24 Hour Fitness focuses its motion on a single argument. It contends that Lyle cannot show any evidence of causation, based on the claim that L.T. was not doing anything prior to the fall that warranted 24 Hour Fitness's intervention, and that, absent literally following L.T. around the play

---

[1]Lyle originally brought a number of other claims, but in her response to 24 Hour Fitness's motion, she abandons the claims brought in her individual capacity, her claim for premises defect, her claim for negligent hiring and retention, and her claim of gross negligence.

area, nothing could have prevented the fall.  24 Hour Fitness bases its argument on the testimony of

Jada Lyle, who testified about what she understood caused the injury, based on what L.T. told her.

In summary, she stated that at the time L.T. was injured she was playing tag with several other

children.  Dkt. No. 46 at 35.  L.T. ran up a set of stairs and into a tube on the playscape.  *Id.*  at 29-

30, 37.  L.T. crawled through the tube, but when she got to the other side she lost her balance, fell,

rolled down another set of stairs and landed on the floor.  *Id.*  Based on this testimony, 24 Hour

Fitness argues that L.T.'s loss of balance was sudden and unforeseeable.  It argues that even if the

Kids' Club employees had been closely supervising L.T., such supervision would not have prevented

such an unpredictable accident.  Indeed, 24 Hour Fitness argues, even if an employee was standing

directly outside of the playscape it would have been impossible for the employee to catch L.T. or

stop the fall, as the stairs are apparently inside the playscape, which is surrounded by netting.[2]  24

Hour Fitness also argues that there is no evidence that anything L.T. or the other children were doing

immediately before the accident was unsafe, improper, or warranted intervention by the Kids' Club

employees.  For its legal support of this argument, 24 Hour Fitness relies on a Fifth Circuit case

applying Louisiana law, which notes that the standard of care for childcare does not require hyper-

vigilance. *Cole v.  Knowledge Learning Corp.,* 416 Fed.  Appx.  437 (5th Cir.  2011).

Lyle does not dispute 24 Hour Fitness's recitation of the evidence.  Instead, she argues that

there is a fact dispute regarding whether the Kids' Club employees' negligence was a cause-in-fact

of L.T.'s injury.  Specifically, Lyle argues that shortly before L.T.'s injury, Kids' Club employees

engaged in a level of supervision that, had they maintained it, would have prevented L.T.'s fall.  Lyle

---

[2]The briefing by both parties is disappointing.  One notable absence from either party's filings is a photograph of the playscape, or a copy of the video of that area (which is discussed extensively in the deposition testimony).  The descriptions in the text are the Court's compilation of how the various witnesses described the playscape in their depositions.

notes that one of the Kids' Club employees, Mary Bridge, testified that only "a few minutes" before L.T. was injured Bridge and another attendant, Alyssa Alvarez, had warned L.T. to stop climbing up the netting around the playscape in a way they viewed as dangerous.  Dkt. No. 50-1 at 16.[3]  At that time, they got up from their chairs, walked across the room and admonished L.T.  *Id*.  Bridge and Alvarez then turned away from L.T.  *Id*. at 21.  L.T. fell shortly after this.  *Id.* at 16.  Lyle argues that had Bridge and Alvarez supervised L.T.'s play in the tube the way they did her play on the net, the accident would not have occurred.  At the very least, Lyle argues, reasonable jurors could disagree as to whether L.T.'s injury would have occurred under better supervision. Lyle also argues that there is a genuine issue of material fact regarding whether the accident was foreseeable.  As Bridge's testimony demonstrates, Kids' Club employees were aware that some forms of play were dangerous and could result in injury.  Finally, Lyle argues that proximate causation is always a question of fact.

Inexplicably, both parties fail to discuss a crucial part of the evidence.  24 Hour Fitness's motion is predicated on a version of the facts that is squarely at odds with the testimony of its own employee, Mary Bridge.  As noted, 24 Hour Fitness claims that L.T. was injured after she climbed up the stairs on one side of the playscape, crawled through a tube, lost her balance, and fell down the stairs on the other side.  Dkt. No. 46 at 29-30, 35, 37.  This version of the facts is based, ironically, on the testimony of the Plaintiff, Jada Lyle.  But Lyle's testimony is not based on her own memory of L.T.'s injury, as she was not there to witness it.  Dkt. No. 46 at 29.  Instead, she relayed the story four year old L.T. told Lyle about how she was injured.  *Id*.  Leaving aside whether a four year old's statement to her mother is admissible (as no one challenges it), Lyle's account directly contradicts

---

[3]Some of the deposition transcripts contain four transcript pages per sheet.  The page citations to these deposition are to the page as numbered by the court reporter, not to the CM/ECF page number.

the testimony of Bridge, one of the two Kids' Club employees on duty when L.T. was hurt.  As mentioned briefly above, Bridge testified that several of the children in the Kids' Club were hanging on netting that made up the walls of the playscape.  But Lyle cites this testimony to argue only that it demonstrated the employees had the ability to control the manner in which the children used the equipment, showing that a lack of adequate supervision could be a cause-in-fact of the injury.  Dkt. No. 49 at 3-5.  What Lyle's response fails to note is that Bridge goes further and testifies about what L.T. told her caused the injury, which was *not* a fall from the top of the stairs:

> Q      Now, when—can you describe for us how [L.T.] was hanging from the net?
>
> A      Hanging.
>
> Q      From what net?
>
> A      Fingers.
>
> Q      Yeah.
>
> A.      There's—when you walk into the Kids' Club, it's just a big, giant playscape, and there's two platforms you crawl onto to get up and into the slide and the—the little tunnel you go into. Well, above the two little platforms, there's netting; she had hopped up on that and was hanging. That's how she fell.
>
> Q      How do you know that's how she fell?
>
> A      Because she told me.
>
> Q      Okay.
>
> A      And so did the other kids.
>
> Q      So let me—I think we've got some photos here. Yeah.
>
>        (Exhibit No. 4 marked)
>
> Q      (BY MR. GABBAY) So let me show you what I've marked for identification as Exhibit 4.  Is that the space maze that we're talking about?
>
> A      Uh-huh.

Q       Yes?

A       Yes.

Q       Okay. Can you–do you—do you see on there where [L.T.] told you that she was hanging?

A       We were right here. She was on these platforms.

Q       Okay.

A       There's netting right here.

Q       Yes.

A       And the pole right back here is probably where she said—she said that she had fallen into a pole, so. And she was right here when she got up, so she—she said she had jumped, hung on the netting, and fallen.

Dkt. No. 50-1 at 51-52.[4]  As relayed by Bridge, the two employees told the children to stop playing on the netting, "and immediately after we turned around, she [L.T.] got on the netting." *Id.* at 4. Bridge also testified that L.T. did not fall "right after" but that there were "a few minutes between play, and then you heard her crying and she said that she had fallen." *Id.* at 5.

      The other Kids' Club employee working on the day in question—Alyssa Alvarez—provided more ambiguous testimony.  For example, she stated that she did not remember whether she heard Bridge give any warnings to L.T. about playing on the netting, and testified that she did not know what caused the accident because she did not see it.  Dkt. No. 50-2 at 22-23, 41-42.  But later in her testimony she spontaneously brought up that she had admonished L.T. not to hang on the netting:

---

[4]As with the comments Lyle testified L.T. made to her about the fall, no one has objected to the testimony cited in the text, in which Bridge testifies what L.T. told her immediately after the fall. It appears to plainly be hearsay, but also may be an excited utterance, and thus within an exception. *See* FED. R. EVID. 803(2).  Regardless, the general rule in the Fifth Circuit is that unobjected-to hearsay may be considered for such probative value as it may have.  *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265, 275 (5th Cir. 1998).

> Q    And if they—if you have a 4-year-old that may not follow the rules one time and you have to tell them again, that's not an unreasonable thing to ask of a caregiver, right, to repeat the rule?
>
> A    No.  If you're asking towards this case, I can say that I have asked [L.T.] multiple times not to hang on that maze.  It—not just her, but multiple kids that she plays with. So. . .
>
> Q    Why did—we hadn't talked about [L.T.] hanging on the maze. What are—what are you talking about?
>
> A    A bunch of the children will play and not follow the rules, and so there has been times where we've reminded them, "That's not how you play."
>
> Q    Do you believe that [L.T.] was hanging on the maze and that's how she got hurt?
>
> A    No, because I didn't see it.

*Id.* at 80.  Alvarez later admitted that when she and Bridge spoke to Lyle about L.T. getting injured, she made a comment to Lyle about L.T.'s propensity to swing on the netting.  *Id.* at 132.

As noted, the sole argument on this motion for summary judgment is based on whether 24 Hour Fitness's employees' alleged negligence in not adequately supervising the children in the Kids' Club caused L.T.'s injury.  But the parties miss a glaringly obvious fact issue: no one knows for certain how L.T. was injured.  While Lyle cites Bridge's testimony about warning L.T. to stay off the netting in her response, she does so only to demonstrate that the employees were capable of a greater degree of supervision at the time of L.T.'s fall.  She does not challenge 24 Hour Fitness's account of the injury which is, again, drawn from her own testimony.  But whether L.T. was hanging from a net, or instead simply lost her balance after crawling through a tube, could make a difference in the Court's proximate cause analysis.  Both Bridge and Alvarez noted that they were aware of the dangers of children climbing on the netting, and both testified that they were aware that L.T. regularly did so, and had to be told to stop.  They also testified that telling children not to climb on the netting was an effective way to get them to stop.  Dkt. No. 50-1 at 28-29.

That neither party brought the discrepancy in this evidence to the Court's attention is troubling.[5] The Court is not under a duty to "sift through the record in search of evidence." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).  Yet the parties' insufficient briefing forced it to do just that.  Because there is a fact issue regarding how L.T. was injured, summary judgment on the question of causation is inappropriate at this time.

**B.     Negligent Supervision and Training**

The standard for negligent supervision and negligent training was well described by Judge Yeakel in his order in this case on 24 Hour Fitness's Motion to Exclude Opinions of Sherryll Kraizer, Ph.D.:

> The Texas Supreme Court has not "ruled definitively on the existence, elements, and scope" of negligent retention, supervision, training, and hiring claims. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n. 27 (Tex. 2010). However, the supreme court has stated: "In a negligent-hiring or negligent-entrustment claim, a plaintiff must show that the risk that caused the entrustment or hiring to be negligent also proximately caused plaintiff's injuries." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010). Texas appellate courts hold that the elements of an action for negligently hiring, supervising, training, or retaining an employee are: (1) the employer owed the plaintiff a legal duty to hire, supervise, train, or retain competent employees; (2) the employer breached that duty; and (3) the breach proximately caused the plaintiffs injury. *See e.g., Morrone v. Prestonwood ChristianAcademy*, 215 S.W.3d 575, 585 (Tex. App.Eastland 2007, pet. denied). Claims against an employer for negligently hiring, supervising, training, or retaining an employee are based on direct liability, not on vicarious liability. *See Soon Phat, L.P, v. Alvarado*, 396 S.W.3d 78, 100-01 (Tex. App.Houston [14th Dist.] 2013, pet. denied).

Dkt. No. 52 at 2.

As noted, Lyle has dropped all claims except those for ordinary negligence, negligent supervision, and negligent training.  Lyle's negligence claim is based on a theory of *respondeat*

---

[5]In its reply, 24 Hour Fitness incredibly claims that "it is undisputed that L.T.'s injury had nothing to do with hanging on or falling off the netting." Dkt. No. 51 at 2.  Lyle may not have disputed this account, but 24 Hour Fitness's employee plainly did when she testified that is precisely how L.T. was injured.

*superior*, as Bridge and Alvarez were acting within the course and scope of their employment at the time of L.T.'s injury.  In its answer to Lyle's second amended complaint, 24 Hour Fitness admits that at the time of the incident in question Bridge and Alvarez were acting within the course and scope of their employment, thereby stipulating that it may be held vicariously liable if the employees negligently caused L.T.'s injuries.  Dkt. No. 16 at 4.  Claims for negligent supervision and training are "based on the employer's own negligent conduct in creating an unreasonable risk of harm to others." *Williams v. McCollister*, 671 F. Supp. 2d 884, 888 (S.D. Tex. 2009) (citing *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex.App.-Fort Worth 2002, no pet.); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex.Civ.App.-Tyler 1979, writ ref'd n.r.e.)).

Negligent training and supervision claims are thus alternative means to the same end: holding an employer liable for the negligence of an employee.  Texas courts have held that "in matters involving only ordinary negligence, a direct liability claim (such as negligent hiring or entrustment) and a claim resulting in vicarious liability under *respondeat superior* could be mutually exclusive modes of recovery." *Id.*

> This occurs only when a plaintiff pleads ordinary negligence (versus gross negligence) against an employer and employee, and the employer's liability for its employee's negligent acts has been established through a stipulation of vicarious liability. In other words, if vicarious liability is not contested, the employee's competence and the employer's own negligence in hiring, failing to properly train, or negligently supervising become irrelevant, as long as a plaintiff pleads ordinary negligence.

*Id.*  This is not the case when a plaintiff pleads ordinary negligence against the employee and gross negligence against the employer, as those two claims are treated as distinct grounds of recovery, but Lyle has dropped her gross negligence claim.  *Id.*  Thus, Lyle's ordinary negligence claim makes her claims of negligent supervision and training irrelevant.

The parties, however, fail to note this.  So, out of an abundance of caution, the Court will also address the substance of the issues that they actually have raised on these claims in the briefing.  As explained, summary judgment is warranted on both claims.

## 1.      Negligent Supervision

24 Hour Fitness argues that to be held liable for negligent supervision, its failure to properly supervise Bridge and Alvarez must have been the cause-in-fact of L.T.'s injuries, and the injuries must have been a foreseeable consequence of the improper supervision.  *Knight v.  City Streets, L.L.C.,* 167 S.W. 3d 580, 584 (Tex.  App.–Houston 2005, no pet.).  In *Knight*, the court held that an employer was not liable for a plaintiff's assault because there was no evidence (1) that the manager was present during the assault; (2) that he had prior knowledge that the employees had a propensity for aggression; (3) that he observed the assault; or (4) that he could have intervened to stop it from happening. Here, 24 Hour Fitness's manager testified about the ways in which the club supervised its employees, including "employee monitoring," surveillance video review and random checks, club tours or walkthroughs, coaching, and reviews of feedback from employees.  Dkt.  No. 46 at 129-32, 133-134, 135.  24 Hour Fitness argues that Lyle has failed to demonstrate any evidence that it was negligent in supervising the Kids' Club staff.

Lyle contends that 24 Hour Fitness should have known that their employees were acting negligently.  Lyle bases her argument on her expert's review of the video footage from the day L.T. was injured.  (The footage itself is not included as an exhibit.)  While the video does not show the actual accident, it contains footage of time after the fall, and apparently shows Bridge and Alvarez with their backs to the children, looking at their cell phones, talking with each other, and ignoring the children in their care to such an extent that an infant crawled away from the "toddler area" room and into the playscape without their notice.  Dkt. No. 50-3 at 27-28. A monitor showing the

surveillance video feed was stationed in the fitness club's manager's office. *Id*. Lyle argues that, presuming that Bridge and Alvarez had shown a similar lack of interest in their duties prior to L.T.'s injury, the manager should have been alerted that his employees were acting negligently and intervened to correct their behavior. *See, id.* at 27-29. Lyle claims that had he done so, L.T. would not have been injured.

24 Hour Fitness responds that Lyle has set the standard for supervision too high: in essence, they argue, Lyle expects 24 Hour Fitness to constantly monitor its employees. This is, indeed, too high a standard. More to the point, Lyle has not introduced any evidence that the actual supervision 24 Hour Fitness conducted of its employees on that day was a cause-in-fact of L.T.'s injury. As such, summary judgment on this claim is warranted.

## 2.      Negligent Training

Finally, 24 Hour Fitness argues that there is no evidence that it breached a duty to train its employees. It argues that Kids' Club employees receive extensive formal training. Prior to beginning work they endure a training program called "24 University," which instructs them on the care and supervision of children in the Kids' Club. Dkt. No. 46 at 126-128. The Kids' Club employees then receive refresher training every one or two months, which is followed by a test about the training manual. *Id*. at 146-147, 150-151. Alvarez testified that her supervisor went "through the step by step of the day of what [she] should be doing inside the Kids' Club." *Id*. at 150-151. Kids' Club supervisors also advised employees on dealing with particular situations. *Id*. Supervisors also corrected employee behavior that ran contrary to the training. *Id*. at 149. And in fact, Lyle's liability expert stated that she found no fault with the substance of 24 Hour Fitness's training. *Id*. at 121-122.

In response, Lyle once again relies on her expert, who stated that while the employees may have undergone training, their negligent behavior on the video makes it clear that the training was inadequate:

> Training is not just "sit and get." It's not just, "go to a computer program and punch through the buttons until it says you passed." Training is knowledge that people who are caring for children can understand the expectations and do what they are expected to do. Training is not a thing that you pass, it's a level of competency that typically involves … actual hands-on observation and coaching as needed so that a supervisor knows there's a level of mastery.

Dkt. No. 50-3 at 13. Essentially, Lyle is making a *res ipsa* argument: if 24 Hour Fitness's training of Kids' Club employees left them so ill-prepared that they would behave the way they did in the video, the training must have been inadequate.

Lyle has introduced an interesting question: does an employee's failure to follow his or her training mean, by definition, that the training was inadequate? But that is not the proper analysis. The question before the Court is whether or not the training that was provided, taken alone, was a cause of L.T.'s injury. On that point Lyle has not produced any evidence sufficient to create a fact issue. Rather, the testimony of the Kids' Club manager and Lyle's expert make it clear that the training that 24 Hour Fitness provided was adequate.

Regardless, as noted earlier, the negligent training and supervision claims are irrelevant because 24 Hour Fitness admits that it is liable under the doctrine of *respondeat superior* for the actions of Bridge and Alvarez. This means all that matters is whether Bridge and Alvarez provided supervision that met the standard of care, and if not, whether that was the proximate cause of L.T.'s fall. It makes no difference if the inadequate supervision of L.T. was the result of Bridge or Alvarez's own negligence, or instead was caused by 24 Hour Fitness failing to adequately supervise or train them. In any event, summary judgment is appropriate on these claims.

## IV.  RECOMMENDATION

Based upon the foregoing, the Court **RECOMMENDS** that the District Judge **GRANT IN PART AND DENY IN PART** Defendant's Motion for Summary Judgment, Dkt. No. 45.  The Motion should be **GRANTED** as to the claims of negligent supervision and negligent training; it should be **DENIED** as to the claim of negligence.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 8 day of June, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE